# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ATUSTA LORIUS,
    Plaintiff,

v.

                            No. 3:17 CV 292 (WWE)

AMEDISYS HOLDING, L.L.C.,
    Defendant.

## MEMORANDUM OF DECISION ON SUMMARY JUDGMENT

In this action, plaintiff Atusta Lorius alleges that defendant Amedisys Holding, L.L.C., violated the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA") when it terminated her without providing her with reasonable accommodation for her disability. Plaintiff also alleges that defendant retaliated against her for filing a workers' compensation claim in violation of Connecticut General Statutes § 31-290a.

Defendant has filed a motion for summary judgment on plaintiff's complaint. For the following reasons, the motion for summary judgment will be granted.

## A. BACKGROUND

The parties have submitted statements of undisputed facts, exhibits and affidavits. These materials reflect the following factual background.

1

Defendant is a home health care company providing home health and hospice care to patients throughout the United States. In 2008, defendant hired plaintiff to work as a home health aide. As a home health aide, plaintiff provided "personal care" assistance to patients in their homes, including, <u>inter</u> <u>alia</u>, helping patients with bathing or showering, changing clothes, preparing food or meals, and taking a patient's blood pressure or temperature. As part of her job duties as a Home Health Aide for defendant, plaintiff drove to patient homes to provide the personal care assistance to the Company's patients.

During plaintiff's employment, defendant maintained certain employment policies that applied to employees including plaintiff. The Employee Handbook set forth these policies, which include the promotion of equal employment opportunity and prohibition of discrimination based on disability or any other legally protected characteristic, in all employment related decisions.

Under the Procedure for Requesting an Accommodation policy, the Employee Handbook states:

> Qualified individuals with disabilities who experience difficulty performing their jobs may make requests for reasonable accommodations . . . to an employee relations manager in the Human

Resources Department. On receipt of an employee's accommodation request . . . the Company will meet with the requesting individual to discuss and identify the precise limitations resulting from the disability and the potential accommodation that Amedisys might make to help overcome those limitations. Employees are expected to fully cooperate in the accommodation process. The duty to cooperate includes making every effort to provide management with current medical information as needed for the Company to ascertain its obligations and the employee's rights. Employees who do not meaningfully cooperate in the accommodation process may waive the right to accommodation.

Also pursuant to the Employee Handbook, defendant maintains an Attendance Policy that emphasizes that attendance is critical to the performance of an employee's job duties. Pursuant to the Attendance Policy, an employee who is out of work on three consecutive days without obtaining approval from his or her supervisor is subject to termination of employment.

Defendant utilizes a third-party administrator to administer its employees' Family Medical Leave Act ("FMLA") requests. The third-party administrator FMLASource corresponds with employees who request leave in accordance with the FMLA.

Defendant also uses a third-party claims administrator to process workers' compensation claims. Pursuant to its standard procedure for the handling of workers' compensation claims, defendant submits

documentation relating to an employee's initial report of injury, and then the third-party claims administrator handles the correspondence, administration, and decisionmaking regarding an employee's claim and eligibility for workers' compensation benefits.

Plaintiff filed claims for workers' compensation benefits while working for defendant in October 2009 and again in February 2011. After each such submission, plaintiff returned to work without incident.

In February of 2015, while attending to one of defendant's patients, plaintiff assertedly slipped and fell, injuring her left knee. Plaintiff submitted a First Report of Injury Form relating to her February 2015 injury. Defendant provided plaintiff with the two weeks off from work that she requested relating to her February 2015 injury. In accordance with its standard practice, defendant assisted plaintiff with the submission of her February 2015 First Report of Injury to defendant's third-party workers' compensation claims administrator, which handled plaintiff's claim for workers' compensation benefits.

On October 28, 2015, plaintiff allegedly fell outside of a patient's home, again injuring her left knee. On or about October 30, 2015, plaintiff provided defendant with a doctor's note, indicating that she needed to be

off work "until further notice." The doctor's note did not provide further specifics regarding the nature of plaintiff's injury, physical limitations, or the expected duration of her absence or putative need for medical leave.

On November 4, 2015, defendant sent plaintiff notice that her physician would need to complete and return a FMLA-based, Certification of Health Care Provider ("CHCP") form for evaluation of her leave request. In a letter, defendant outlined how plaintiff should substantiate her request for leave and administration of the leave request process.

On November 16, 2015, plaintiff returned her initial CHCP. The fields relating to the start and end of her anticipated leave were completed with the notation "TBD."

FMLASource sent plaintiff a letter dated November 18, 2015 to her home address and an email to her email address explaining that the November 16, 2015 CHCP was deficient, and that plaintiff was expected to return an updated and fully completed CHCP within seven days for evaluation of the leave request.

On December 15, 2015, plaintiff submitted a second CHCP to FMLASource. This CHCP indicated that Plaintiff needed leave from February 15, 2016 through "TBD" for "knee osteoarthritis" and "knee

arthritis," and that she would also need "intermittent" leave during that time.

On January 7, 2016, plaintiff's physician returned an updated CHCP estimating that plaintiff would need to be out of work from February 15, 2016 through May 15, 2016 "(approximately)."

On January 11, 2016, FMLASource sent plaintiff a letter to her home address and an email to her email address indicating that her leave from February 15, 2016 through May 15, 2016 would be approved. That same letter, however, also notified plaintiff that her leave from work prior to February 15, 2016 was denied due to lack of the required certification from her health care provider.

On January 25, 2016, defendant tendered plaintiff a letter, noting that she could be subject to disciplinary action because her leave request beginning on October 29, 2015 through January 20, 2016 had been denied.

In early February 2016, FMLASource received Short Term Disability (STD) documentation from defendant's STD provider, Sun Life Assurance Company of Canada, which allowed FMLASource to retroactively approve Plaintiff's FMLA-related leave from October 29, 2015 through January 20, 2016.

On February 11, 2016, FMLASource sent plaintiff a letter at her home

address and an email to her email address notifying her that her leave request beginning after February 15, 2016, which FMLASource extended to begin on February 17, 2016 under the Connecticut FMLA, was no longer approved because plaintiff had exhausted all of her allotted federal and state FMLA leave time by that date.

On February 12, 2016, FMLASource sent plaintiff a letter to her home address and an email to her email address; this correspondence informed her that if she still required leave beyond February 17, 2016, or other reasonable accommodation under the ADA or analogous state law, she would need to return the appropriate medical documentation in support of such a request. The letter attached the form that plaintiff needed to have filled out by a health care professional. The letter requested that plaintiff return the requisite form within fifteen (15) days and, that she should inform FMLASource if she was unable to return the form within that time period.

By March 2, 2016, plaintiff had neither communicated with FMLASource, nor returned the documentation requested in FMLASource's February 12, 2016 letter.

On March 2, 2016, FMLASource sent plaintiff a letter and an email notifying her of her failure to provide the requested medical documentation

in support of her request for additional leave pursuant to the ADA and state law.

On or about March 16, 2016, defendant's Employee Relations Consultant of HR Governance, Compliance, and Diversity, Taylor Garrity ("Garrity"), reviewed plaintiff's leave file. According to her affidavit, Garrity determined that plaintiff had exhausted her entitlement to federal FMLA leave on January 20, 2016, and under Connecticut's FMLA on February 17, 2016; that plaintiff had not responded to defendant or FMLASource's correspondence since January 7, 2016; and that she had voluntarily abandoned her employment.

On March 16, 2016, defendant informed plaintiff of her termination based on her failure to come to work or otherwise submit any documentation to request an accommodation. Plaintiff has agreed that, on this date, there was nothing in the form of any accommodation that defendant could have provided to plaintiff in order to enable her to work as a Home Health Aide. At her deposition on December 29, 2017, plaintiff testified that she does not believe that she will be able to go back to work as a Home Health Aide at any point.

In response to an Interrogatory regarding her efforts to mitigate her damages, plaintiff stated: "N/A. I am unable to work because of knee injury and am receiving disability." Plaintiff represented to the United States Social Security Disability Administration that she is unable to work due to her alleged medical conditions. Plaintiff receives a weekly check from the Social Security Disability Administration for her total disability.

Plaintiff has been unable to drive a car since at least February 16, 2016.

### B.  DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to

the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F. 2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which she has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp.</u>, 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. <u>Anderson</u>, 477 U.S. at 249.

<u>Disability Discrimination</u>

Plaintiff has alleged that defendant violated the ADA and CFEPA when it terminated her employment. Specifically, plaintiff alleges that she "was fully capable of performing all of the essential functions of her job with reasonable accommodation, that is, being granted medical leave until she recovered." She also alleges that she was terminated because of her disability, and that defendant's claim that she was terminated for failure to complete the necessary paperwork represents a pretext for discriminatory animus.

The Court will review the state and federal discrimination claims together since the standards pursuant to the ADA and CFEPA are

generally similar. Koenig v. City of New Haven, 2018 WL 1440175, at *4 (D. Conn. March 12, 2018) (citing cases). "While CFEPA defines disability more broadly than the ADA, the ADA and CFEPA apply the same standards for reasonable accommodation." Green v. Celico Partnership, 218 F. Supp. 3d 157, 167 (D. Conn. 2016).

Reasonable Accommodation

The ADA requires employers to make a reasonable accommodation to known physical or mental limitations of an otherwise qualified individual. McBride v. Bic Consumer Mfg. Co. Inc., 583 F.3d 92, 96 (2d Cir. 2009); Valenzisi v. Stamford Bd. of Educ., 948 F. Supp. 2d 227, 240 (D. Conn. 2013). To survive a motion for summary judgment on a reasonable accommodation claim, plaintiff must show evidence for a reasonable jury to find (1) that she is disabled within the meaning of the statute; (2) that she was able to perform the essential function of the job with or without reasonable accommodation; and (3) that defendant, despite knowing of plaintiff's disability, did not reasonably accommodate plaintiff's disability. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004) (ADA). If the employee makes such a prima facie showing, the employer must show that such an accommodation would impose an undue

hardship on its business.  Tilman v. Verizon New York, Inc., 2015 WL 4603372, at *21 (E.D.N.Y. 2015).

"The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  McBride, 583 F.3d at 100.  The employer may need to initiate an informal interactive process with a qualified individual.  Jackan v. New York State Dept. of Labor, 205 F.3d 562, 566 (2d Cir. 2000).  The determination of what is a reasonable accommodation requires an inquiry into the benefits of the accommodation and the costs as well.  Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 138 (2d Cir. 1995).  An accommodation is reasonable if it enables an individual with a disability who is qualified to perform the essential functions of his employment.  Noll v. Int'l Business Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015).  An essential function is considered to be a fundamental duty to be performed in the position rather than a marginal function.  Palmieri v. City of Hartford, 947 F. Supp. 2d 187, 202 (D. Conn. 2013).  A reasonable accommodation can never involve the abrogation of the employee's responsibility for an essential function of the job.  Shannon v. New York City Transit Authority, 332 F.3d 95, 100 (2d Cir. 2003).  "A court must give

considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." Shannon, 332 F.3d at 100. Plaintiff bears the burden of production and persuasion as to the existence of a reasonable accommodation. Wenc v. New London Board of Education, 702 Fed. Appx. 27, 29 (2d Cir. Aug. 21, 2017).

A temporary leave of absence may constitute a reasonable accommodation; however, "an employer is not required to place an employee on an indefinite leave, awaiting the day when the employee might recover sufficiently from his disability to return to work." Dansler-Hill v. Rochester Institute of Technology, 764 F. Supp. 2d 577, 583 (W.D.N.Y. 2011). Generally, "a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 186 n.6 (2d Cir. 2006). ADA liability does not follow where an employee has failed to provide documentation sufficient to allow the employer to assess the employee's need for a reasonable accommodation. Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008).

Plaintiff has not adduced evidence suggesting that the reasonable accommodation of a temporary leave of absence would have enabled her to return to work and perform the essential function of her position. In the response to defendant's statements of undisputed facts, plaintiff agreed that, as of the date of her termination, "there was nothing in the form of any accommodation that defendant could have provided to plaintiff in order to enable her to work as a Home Health Aide." Accordingly, the Court will grant summary judgment in defendant's favor on the reasonable accommodation claim.

Disparate Treatment Based on Disability

Pursuant to the ADA, a plaintiff must establish that (1) the employer is subject to the ADA; (2) she is an individual who has a disability within the meaning of the statute; (3) she was otherwise qualified to perform the essential function of her job, with or without reasonable accommodation; and (4) that she suffered an adverse employment action because of her disability. Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006). ADA claims are subject to the familiar burden-shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-discriminatory

business reason for the alleged discriminatory action. Plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

Consistent with the Court's discussion relevant to her reasonable accommodation claim, plaintiff has not shown that she is covered by the ADA as an otherwise qualified individual who could perform the essential job functions with a reasonable accommodation. Accordingly, the Court will grant summary judgment in defendant's favor on this claim.

Retaliation

Plaintiff has asserted that she suffered retaliation in violation of Connecticut General Statutes § 31-290a, based on her filing of a worker compensation claim in February 2015.

Generally, Section 31-290a is subject to the same burden shifting frame work as the ADA or CFEPA retaliation claims. See Consiglio v. Montano Cigarette, 2014 WL 783471 (Conn. Super. Ct.) (discussing analysis of Section 31-290.).

In order to establish a prima facie case of retaliation, plaintiff must show that "(1) the employee was engaged in an activity protected by the federal

disability statute, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).  In the context of retaliation, the applicable standard for adverse employment action is broader than that applied to discrimination claims.  Santiesteban v. Nestle Waters North America, Inc., 61 F. Supp. 3d 221, 241 (E.D.N.Y. 2014).  A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co., 548 U.S. 53, 68 (2006). Actions that are "trivial harms" such as "petty slights or minor annoyances that often take place at work and that all employees experience" are not materially adverse.  Id. at 68.

 If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-retaliatory reason for the challenged employment decision; plaintiff must then "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a

16

pretext for impermissible retaliation." Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002).

A plaintiff can establish a causal connection between the protected activity and the adverse employment action through indirect evidence such as showing a temporal proximity between the protected activity and retaliation, or the disparate treatment of comparable employees who engaged in similar conduct. Fullwood v. Sodexo, Inc., 2018 WL 3439866 (W.D.N.Y. July 17, 2018). To satisfy the causation showing based on temporal proximity, the retaliatory conduct must have followed "very close" in time after the protected activity. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). The Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated." Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013). Thus, the Court may "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).

Here, the termination occurred approximately one year after plaintiff filed her workers' compensation claim, which is insufficient temporal proximity, without more, to establish an inference of causation. See Fasoli

17

v. City of Stamford, 64 F. Supp. 3d 285, 300 (D. Conn. 2014) (two month gap is insufficient to establish causal connection); Muoio v. Costco Wholesale Corp., 2015 WL 222160, at *15 (D. Conn. Jan. 14, 2015) (ten months between workers compensation claim and alleged retaliation was insufficient to support inference of causation).   The Court finds that plaintiff has adduced no other evidentiary support for her assertion of a retaliatory termination.

Accordingly, the Court will grant defendant's motion for summary judgment on the retaliation claim.

### C.   CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. #43] is GRANTED.   The clerk is instructed to close this case.

Dated this 23rd day of October, 2018, at Bridgeport, Connecticut.


/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE